### In re Appeal of Louis Devoid and Dorothy Gaboriau

[287 A.2d 573]

Nos. 85-71 and 86-71

Present: Shangraw, Barney, Smith and Keyser, JJ., Daley, Supr. J.

Opinion Filed February 1, 1972

*J. Morris Clark*, Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*James M. Jeffords*, Attorney General, and *Louis P. Peck*, Assistant Attorney General, for Defendant.

**Keyser, J.** These are separate appeals from the decision of the Social Welfare Board relative to the shelter (rent) allowance paid to the appellants under the federal government welfare grant for Aid to Needy Families with Children (ANFC). Each case advances identical issues and by agreement they were consolidated for hearing and disposition before the board and in this Court.

The question for review as stated by the board in its "Certification of Questions for Review" is as follows:

> "Does the shelter allowance provided by the Department of Social Welfare to recipients of Aid to Needy Families With Children, Family Services Policy Manual § 2211.3, conform to the requirement of Section 402(a)(23) of the Federal Social Security Act, 42 U.S.C. § 602(a)(23) that allowances reflect current living costs?"

The record shows that the appellant Devoid's benefit was reduced on November 1, 1970, and as a result he requested a fair hearing. The Commissioner of the Department of Social Welfare reviewed the case and responded by letter to the recipient on February 24, 1971, as follows:

> "I have reviewed your case in connection with your request for a Fair Hearing.

Although the amount of your basic needs for food, clothing, utilities, fuel and personal needs was increased to 100 percent from 89.5 percent of your needs as a result of the change in regulations on November 1, 1970, your special needs were reduced by a 100 percent ratable reduction factor and not funded. Also, in keeping with the regulatory change of November 1, 1970, the amount of the shelter money given you which was by special exception in excess of the shelter maximum was removed as it was for all other ANFC recipients at that time.

The result of the foregoing was, that although about 94 percent of the ANFC caseload received some increase as a result of the change, a few such as yourself, who were receiving funds in excess of normal standards, received a decrease. In your case the decrease amounted to $20.00 per month."

On March 4, 1971, the Social Welfare Board held a Fair Hearing as requested by appellant Devoid and thereafter issued its decision in his case as follows:

## "FINDINGS

This matter was submitted with the Dorothy Gaboriau case, SWB # 203. (See also No. 168 and No. 170.)

Petitioner, an ANFC recipient, appealed because his shelter expense is $210 and the shelter allowance is $88 per month. He is a home-owner, as opposed to a renter.

## ORDER

The Commissioner's decision is affirmed.

## REASONS FOR DECISION

Petitioner alleged as his ground for appeal that the shelter maximum limiting his grant was the result of an arbitrary adjustment to the maximum used by the Department in the past.

The Department responded with evidence of a statistical basis for the adjustment.

The board concludes, on the basis of those statistics, that the Department did not proceed in an arbitrary

fashion as petitioner alleged, and the Commissioner's decision is therefore affirmed.

This order was approved and adopted by the Social Welfare Board meeting in Rutland on May 25, 1971."

As we have noted, the Fair Hearing requested by appellant Gaboriau was consolidated by the Social Welfare Board with that of appellant Devoid. In her case the board handed down the following decision:

## "FINDINGS

Petitioner's shelter exception ($37 per month) was discontinued on November 1, 1970, as a result of changes in Department regulations. The net effect of the changes was that the family's ANFC grant was reduced thirteen dollars. (Compare John Provost, No. 168; Theresa Roberge, No. 170; and Louis Devoid, No. 206.)

The Department did not revise its shelter standards in an arbitrary fashion.

## ORDER

The decision of the Department is affirmed.

## REASONS FOR DECISION

Petitioner contends that the elimination of her shelter exception was not proper because the maximum that limits her grant is not realistic and has not been computed upwards in accordance with Section 402(a)(23) of the Social Security Act and *Rosado* v. *Wyman*. In particular it is alleged that the Department's shelter maximum was revised in an arbitrary fashion.

The circumstances of the updating are reflected in a memorandum addressed to Charles Bristow from Ed Price, Chief of Welfare Research and Statistics. That document was admitted as evidence in the John Provost fair hearing and by stipulation is part of the record in this case. It lists the sources and the figures that were considered when the Department revised its shelter maximum.

Petitioner did not suggest what it is that was arbitrary about the use of the statistics. The available evidence indicates that the Department proceeded in a reasonable fashion and the Department decision is therefore affirmed.

This order was approved and adopted by the Social Welfare Board meeting in Rutland on May 25, 1971."

The appellants contended below, as they do here, that the elimination of their shelter exceptions was not proper because the maximum that limits their grant to $88.00 is not realistic and has not been computed upwards in accordance with Section 402(a) (23) of the Social Security Act and *Rosado v. Wyman,* 397 U.S. 397, 25 L.Ed.2d 442, 90 S.Ct. 1207 (1970). They therefore urge that their maximum allowance be held invalid and that they be paid the full extent of their expenditures.

The federal statute, 42 U.S.C. § 602 (a) (23), was added to by "Amendments of 1967 Congress" as follows:

"[The States] shall provide that by July 1, 1969, the amounts used by the State to determine needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted."

The appellants contend that under this amendment the Department's shelter maximum must reflect actual shelter costs.

There is, as expressed in the statute, a distinction between standards of need and maximums. Standards of need are determined by cost-of-living statistics while maximums relate to maximum grant limitations. Standards reflect the amount necessary to meet actual needs, that is, what the benefits would be provided there were no fiscal limitations. Maximums are the amounts granted to beneficiaries to accommodate budgetary requirements by reducing the percent of benefits paid.

The 1967 amendment, *supra,* makes it clear that Congress fully recognized that the Act permits maximum grant regulations.

In *King* v. *Smith,* 392 U.S. 309, 20 L.Ed.2d 1118, 88 S.Ct. 2128 (1968), the court stressed the States' "undisputed power", under these provisions of the Social Security Act, "to set the level of benefits and the standards of need." *Id.* 392 U.S. at 318–19, 20 L.Ed.2d at 1126.

And in *Rosado* v. *Wyman, supra,* 397 U.S. at 408, Justice Harlan speaking for the Court wrote:

> "There are two basic factors that enter into the determination of what AFDC benefits will be paid. First, it is necessary to establish a 'standard of need', a yardstick for measuring who is eligible for public assistance. Second, it must be decided how much assistance will be given, that is, what 'level of benefits' will be paid. On both scores Congress has always left to the States a great deal of discretion."

Again in *Dandridge* v. *Williams,* 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153 (1970), the Court held that the state of Maryland regulation which imposed maximum limit on the total amount of aid which any one family unit could receive was not inconsistent with the Social Security Act.

■ The appellants argue that "welfare grants (under this aid program) must reflect accurately the costs of living which the grant is supposed to meet". They claim that the need standard must be placed at a figure adequate to provide recipients with decent, adequate shelter for all members of the assistance group. But this is the function of a shelter standard. To do as appellants contend would require the state to replace its maximum with its shelter standard. This is contrary to what the Court held in *Dandridge* v. *Williams, supra,* 397 U.S. at 482—"Congress fully recognized that the [Social Security] Act permits maximum grant regulations." That case rejected the idea that the language of 42 U.S.C. § 602(a)(23) means maximums must be raised to the level of actual need. See also *Rosado* v. *Wyman, supra,* 397 U.S. at 413; *King* v. *Smith, supra.*

In compliance with 42 U.S.C. § 602(a)(23), the Social Welfare Board updated its shelter maximums effective November 1, 1970. See "Memorandum of Chief of Welfare Research

and Statistics", entitled "Appendix A", admitted into evidence by stipulation as an exhibit. As a result of the regulatory change the rent payments in excess of the maximums then being paid to the appellants and some other recipients were removed and the updated rent maximums were put into effect. The maximum rent allowance adopted in 1967 was $85.00. The evidence establishes that there was an increase of 3.5% in rent cost from the spring of 1967 to 1969. On this basis the board found the applicable maximum rent allowance to which each appellant was entitled was $88.00 per month. This allowance as thus determined is the amount each is receiving.

The appellants included as a part of the printed Case a page headed "Table H" which gave statistical data on housing costs statewide. They claim the board accepted this document as proof to support its rejection of the appellants' claim. Contrary to appellants' contention "Table H" was not placed in evidence in the Fair Hearing before the board. It is not a part of the record before us. Neither is it in the case file nor referred to by the board in its order. The use of "Table H" as the basis of appellants' contention is, of course, unavailable. The appellants' argument that the figures contained in "Table H" do not establish an accurate standard of need as required by *Rosado* is unsupported and ineffectual.

The appellants in challenging the decision of the department at the Fair Hearing before the board introduced no countervailing evidence. There was no evidence introduced to show just how the source and figures in "Appendix A" considered by the Department in the revision of its shelter maximums was unreasonable or in anywise contrary to 42 U.S.C. § 602(a)(23). Further, there were no exceptions taken to the findings, and they thus stand undisputed. Much of the appellants' argument here touches on facts not supported by any evidence nor by any findings of the board. The record fails to show that the action of the board was in any sense arbitrary. Neither does it indicate that there were any impinging consequences from its action.

They argue that the statute requires the board to openly set forth the differential between the standard of need and

the percentage of that amount which is paid to beneficiaries. Publicity in this area is not material to any issue in the case. Moreover, it is not shown how, even if the department should take the action claimed by the appellants, that there would be any resulting increase in shelter benefits to the appellants. Vermont has always used maximum grant regulations and this procedure is fully recognized by Congress. *Dandridge* v. *Williams, supra,* 397 U.S. at 482.

On review of the acts or orders of an administrative body, the court will presume, among other things, that the administrative action is correct and that the orders and decisions of the administrative body are valid and reasonable. 73 C.J.S. *Public Administrative Bodies and Procedure* § 205. This presumption in favor of the validity of the administrative determination is, moreover, a strong one, and clear and convincing evidence is required to overcome it. *Id.* Here, there is a lack of any such evidence.

There is no transcript available of the proceedings before the board, but the record presented does indicate that the findings and decision of the board are founded on uncontroverted evidence and justify the conclusion of the board. We find no error on the issue raised by the appeals.

*The order of the Social Welfare Board is affirmed. To be certified to the Social Welfare Board.*