**In re Peter Willey**

[350 A.2d 353]

Nos. 219-74, 255-74

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed December 2, 1975

*Eugene F. Rakow*, Vermont Legal Aid, Rutland, for Petitioner.

*M. Jerome Diamond*, Attorney General and *David L. Kalib*, Assistant Attorney General, Montpelier, for State.

**Daley, J.** This is an appeal from decisions of the Human Services Board that the petitioner-appellant was not entitled to payment of his physician's witness fees and that he was not entitled to disability benefits under the Vermont Aid to the Disabled Program.

Petitioner is an eighteen-year-old man with a ninth grade education. He finished school in 1971 and worked at heavy labor until October, 1972. In October petitioner was involved in an automobile collision from which he received extensive injuries.

On May 23, 1973, petitioner filed an application for disability benefits to the Vermont Department of Social Welfare. Upon review of the medical review team report of August 6, 1973, his application was denied. And, on September 10, 1973, a fair hearing was held before the hearing officer of the Human Services Board to review the determination of the medical review team. The hearing officer ruled against petitioner. On October 16, 1973, the Human Services Board affirmed the decision denying the petitioner's application for Aid to the Disabled. This decision was appealed to this Court.

At the hearing on September 10, 1973, it was stipulated that a deposition would be taken of the petitioner's doctor at a later date since he was not available for the fair hearing. It was for this reason that this Court vacated the Board's order of October 16 and remanded the matter to the Board so that the physician's deposition would be considered in connection with evidence already submitted to determine the eligibility of petitioner for benefits.

On remand, the Board affirmed the decision denying petitioner disability benefits and made the following findings of fact. Petitioner's activities were limited to a significant degree because of hip and knee injuries, and neither condition was expected to improve in the foreseeable future. These impairments precluded him from heavy labor, but not from certain types of light work; he could drive a light vehicle or perform manual work that would allow him to alternate between sitting and standing positions.

In addition to these findings the Board, in its supplemental order of November 26, referred to findings made in its initial order of October 16, 1973, for more detailed background information. These findings related that as a result of the automobile collision petitioner cannot remain standing more than fifteen to twenty minutes at a time. He becomes uncomfortable if he sits still too long, and experiences pain in his legs when he bends. He is able to spend about one hour a day doing chores around the house such as cooking, washing dishes, and sweeping floors.

The findings also related that petitioner was refused a job in the laundry room of a hospital because of his medical problems. And, Employment Security ruled out jobs that required driving since, although found to be capable of driving a vehi-

cle with automatic transmission, petitioner has no driver's license. A counsellor with the Vermont Department of Rehabilitation offered the opinion that there is little chance of petitioner finding a job. And, a witness, experienced in finding jobs for welfare recipients, testified that petitioner will probably not become employed in the foreseeable future regardless of the efforts made. The Board also found that an effort had been made by petitioner to work as a floor sweeper at a store which failed because of his inability to tolerate the long periods of standing involved.

The only findings of fact possibly adverse to the petitioner concern medical reports which confirm petitioner's injuries and advise that he is "permanently partially disabled" and may someday require further corrective surgery. Another report by the physician stated that "he is presently unable to be gainfully employed but I suspect within three to six months he would be able to do light work", and that his impairments did not preclude him from certain types of light work, such as driving a light vehicle or manual work that would allow him to alternate between sitting and standing positions.

The question certified here in No. 255-74 is whether the evidence shows that petitioner was totally and permanently disabled, within the meaning of the Social Security Act and applicable State regulations, when he applied for aid to the disabled in 1973. At the time of the decision of the Human Services Board, the relevant regulations in effect, but since repealed, were found at § 2320 of the Welfare Assistance Manual.

2320–2329 *Disability* (*AABD*)

> "Permanent and total" disability is defined as a permanent physical or mental impairment, disease or loss which precludes an individual from engaging in useful occupations within his competence, such as holding a job or homemaking. Such impairment may be obvious, such as loss of a limb, or discernable only through medical examination, but is not confined to complete helplessness.

> Criteria for evaluation of the elements of the above definition are further defined as follows:

> 1. *"Permanent"*

> "Permanent" disability refers to a physiological, ana-

tomical or emotional impairment, verifiable by medical findings, of major importance, which is expected to continue through the individual's lifetime and is not likely to improve.

### 2. *"Total"*

"Total" disability is determined with reference to the ability of the individual to perform activities necessary to carry out responsibilities of employment or homemaking. This involves assessment of the individual's probable functioning in his particular situation in terms of his impairment; no time factor is involved.

### 3. *"Substantially Precludes"*

"Substantially precludes" refers to the extent to which a permanent impairment leaves an individual unable to engage in the necessary activities of a "useful occupation" well enough and with sufficient regularity to receive regular payment or to carry homemaking responsibilities on a continuing basis.

### 4. *"Useful Occupation"*

A "useful occupation", in general, means productive activity which adds to economic wealth by producing goods or services to which the public attaches a monetary value. It demands the time and attention of the doer for the ultimate benefit of others.

Hobbies, occupational therapy, training activities, and similar remunerative activities which may be engaged in by handicapped individuals are not considered "useful occupation" in this context.

No competent evidence was introduced below to show that petitioner is able to engage in the necessary activities of a useful occupation well enough and with sufficient regularity to receive regular payment. The Board's conclusion is based solely upon conjectural and speculative findings.

 The testifying physician was specifically asked if, with the Department's regulations in mind, he considered petitioner's physical condition to be permanent and total, and if he thought that the impairment would preclude petitioner from engaging in "a useful occupation within his competence." The

doctor replied in the affirmative to each of these questions. This evidence was proffered by a competent, medical witness. It indicates clearly his opinion that petitioner is permanently and totally disabled within the meaning of the regulations, and it is unrebutted.

Also unrebutted, and in apparent conflict with the Board's determination, is the doctor's testimony which established that standing or walking for extended periods of time will induce an arthritic condition in petitioner's hip, which will probably be a source of increasing pain and disability, and has already worsened slightly since the injury. The doctor also testified that, while "ideally" petitioner might be able to engage in sedentary work, "realistically" he is incapable of working an eight-hour day if engaged in constant activity, even though the work be of a sedentary nature.

Although there exists a strong presumption, on the review of the acts or orders of an administrative body, that its orders and decisions are valid and reasonable, clear and convincing evidence will overcome it. *In re Devoid*, 130 Vt. 141, 287 A.2d 573 (1972). The undisputed medical testimony introduced before the Board overwhelmingly supports a determination contrary to that reached by it.

There was testimony that petitioner could perform sedentary tasks. Perhaps this testimony led to the Board's determination that he was not excluded from the job market altogether and able to do certain types of unskilled work. This conclusion is error for, although petitioner might be able to perform the tasks of a given job, there is no evidence that he would be able to "hold" a job as required by the regulations. Permanent and total disability is "not confined to complete helplessness". It is sufficient if the individual is precluded from engaging in useful occupations "within his competence", as was petitioner here. When an individual is competent to perform each task normally required in a given occupation, but unable to perform each continuously or consistently as the occupation may require, that occupation is not "within his competence".

Furthermore, that the individual in question shows a willingness to make an attempt at a given occupation, as did petitioner here, should not alone serve to deny him benefits under Department regulations.

Also certified here, in No. 219-74, is the question whether, in the absence of an agreement or promise to pay, the Department of Social Welfare is required to pay witness fees to .a physician offering testimony on behalf of an applicant seeking assistance at a proceeding brought to challenge a denial of assistance. The Board below determined that the Department was not responsible for payment of the fee.

 We disagree with the Department that the Board did not have jurisdiction to hear the witness fee issue. The doctor appeared as a witness on behalf of petitioner and, as an ap- plicant for assistance, petitioner is a proper party. Since he applied for payment of the witness fee, the Board had subject matter jurisdiction. See also 3 V.S.A. § 3091.

For requiring the Department to pay the witness fee, peti- tioner points to Department Regulation 2321, which provides that an applicant seeking assistance is entitled to "reasonable charges for required examination(s) . . . paid as an administra- tive expense by the department." He would have this section cover expenses necessary in presenting a case at a fair hear- ing, including medical evidence presented by written deposi- tion. But the Department had paid the doctor for all prior medical services rendered petitioner, as it was required to do, and it is medical reports and examinations by the doctor for which reimbursement may be had. We do not read the regula- tion as requiring payment of witness fees to a doctor offering testimony on behalf of an applicant before the Board. Nor do we agree with petitioner that Human Services Board Rule 7 and 45 C.F.R. 205.10(a)(10) require such payment.

*The question in No. 255-74 is answered in the affirmative. The Human Services Board decision of November 24, 1974, denying petitioner disability benefits is consequently reversed, with directions that disability benefits be paid to petitioner. The question in No. 219-74 is answered in the negative.*