**Earline Pratt v. Department of Social Welfare**

[482 A.2d 1389]

No. 83-044

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed September 14, 1984

*Gretchen S. Bailey* and *Thomas F. Garrett,* Vermont Legal Aid, Inc., Burlington, for Plaintiff-Appellant.

*John J. Easton, Jr.,* Attorney General, Montpelier, and *Mark L. Stephen,* Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Gibson, J.** Earline Pratt appeals a decision of the Human Services Board (Board) denying her eligibility for medicaid benefits. The Vermont Department of Social Welfare (Department) had originally denied her application for benefits, and Mrs. Pratt then requested a hearing. The Board held a "fair hearing," 3 V.S.A. § 3090(b), which was conducted by a hearing officer. 3 V.S.A. § 3091(b), (c). At issue is whether the Board was correct in concluding that Mrs. Pratt was not disabled under the relevant medicaid regulation, and, more fundamentally, whether the Board committed error when its determination of noneligibility apparently went against the weight of the hearing officer's findings.

Mrs. Pratt is a forty-eight year old woman who lives with her husband; Mr. Pratt's earnings constitute their sole income. Mrs. Pratt's four children from a previous marriage are all adults who live apart from her home; her teenage son from the current marriage is in foster care. Mrs. Pratt has an eighth grade education and has had no vocational training. Her work history consists primarily of cooking, related kitchen work, and cleaning. She was discharged from her last employment as a part-time cook at a college fraternity house in December of 1981, because she was unable to perform the work. Mrs. Pratt

experienced pain in her back and arms and found it difficult to stand for the periods of time required by the job.

The medical evidence in this case, which is based on the reports of several physicians, indicates that Mrs. Pratt suffers from a variety of illnesses and ailments. She has diabetes and takes insulin injections to control it; this problem causes poor circulation and numbness in her legs. Mrs. Pratt has arthritis which causes back and leg pain, and she is a heavy smoker and has developed emphysema. She has had operations to remove calcium deposits from her shoulder and has a history of bursitis which causes pain in her arms and shoulders. Mrs. Pratt also has a history of stomach pains. She takes or has taken medication for all of these problems.

In recent years, Mrs. Pratt has also been affected by severe depression. The medical evidence noted symptoms including sleep disturbance, despair, lack of energy and a "suicidal gesture." In summary, both the hearing officer and the Board made the following observation: "The overall picture that emerges from the medical evidence and the petitioner's testimony is of a woman with several interrelated physical and emotional problems which have the cumulative effect of greatly impairing her daily functioning."

Nevertheless, the Board ignored the recommendation of the hearing officer and concluded as follows:

> [T]he Board is of the opinion that there is substantial evidence in the record suggesting that the petitioner's problems would improve if she were gainfully employed in some capacity. Virtually all of the medical evidence indicates that the petitioner's physical problems are exacerbated by her emotional distress. The Board is of the opinion that the fact that the petitioner spends most of her time alone at home no doubt contributes to her somatic complaints. The Board concludes that this inertia is a major contributing factor to the petitioner's claimed disability.

Unfortunately, the Board nowhere pointed to the elusive "substantial evidence." The only conceivable support for the Board's conclusion was the opinion of the Department's vocational expert that Mrs. Pratt's medical problems would not preclude her from working part-time as either (1) a child

care monitor\* or (2) a school cafeteria kitchen worker. Mrs. Pratt argues that the medical evidence belies the Board's conclusion, and that the Board improperly substituted its judgment for that of her treating physicians. We agree.

## I.

After Mrs. Pratt's application for medicaid benefits was denied by the Department, she requested a hearing before the Board pursuant to 3 V.S.A. § 3091(a). The Board had a hearing officer conduct the hearing as authorized by § 3091(b). Thus, subsection (c) became operative:

> The board or the hearing officer shall issue written findings of fact. If the hearing is conducted by a hearing officer his findings shall be reported to the board, and the board shall approve the findings and adopt them as the findings of the board unless good cause is shown for disapproving them. Whether the findings are made by the board, or by a hearing officer and adopted by the board, the board shall enter its order based on the findings.

3 V.S.A. § 3091(c). Therefore, we must first determine if the Board complied with the statutory procedures for rendering an order based on a hearing conducted by a hearing officer.

Section 3091(c) requires that the findings of the hearing officer "shall" be approved and adopted "unless good cause is shown for disapproving them." Although the Board made no formal statement adopting or rejecting the findings, nowhere in the Board's findings, order or "reasons for order" were the findings of the hearing officer disputed. In fact, up to the order affirming the Department's denial of benefits, the Board's findings are a virtual recitation of the hearing officer's findings. The dispute arises when the Board's "order" and "reasons for order" diverge from the hearing officer's "recommendation" and "reasons for recommendation."

The Department argues on appeal that the Board had the "good cause" required by § 3091(c) to reject the hearing officer's *recommendation*. This argument is misplaced; the statute speaks of the findings, not of a recommendation. Section 3091

---

\* On appeal, the Department does not argue for Mrs. Pratt's ability to work as a child care monitor.

nowhere refers to any recommendation or reasons for recommendation to be made by the hearing officer. Certainly the hearing officer's recommendation and supporting reasons may generally be helpful to the Board, but they appear to be gratuitous. We will confine our analysis to the requirements of § 3091(c). Thus, the "good cause" requirement goes only to the findings, and the Board must "show" such cause when disputing findings made by a hearing officer; otherwise, the Board shall approve and adopt the findings. § 3091(c). The burden is on the Board to show good cause when its decision is rendered.

In another administrative context, we have observed that "[t]he hearing examiner functions as the trier of fact in this kind of case. If there is evidence tending to support his findings, they will, in the ordinary situation, be sustained here, since the evaluation of that evidence is for him." *Devost* v. *New Hampshire Electric Coop., Inc.*, 134 Vt. 15, 18, 349 A.2d 896, 898 (1975). Thus, the hearing officer acts as the fact finder for the Board; the hearing officer does not render an intermediate decision subject to review by the Board. The parties to the instant appeal seem to be under the misconception that the Department's decision is appealed first to the hearing officer and then to the Board. Section 3091(a) provides only for review and an order by the Board, even though the hearing may be held either before the Board itself or before a hearing officer. *Id.* (b). In either case, there is only one order relative to the Department's decision, and that is by the Board.

In the instant case, the Board neither demonstrated good cause nor did it purport to disapprove any findings by the hearing officer. Thus, we conclude that the facts as found by the hearing officer were adopted by the Board and constitute the record for our review.

## II.

Next, we address the application of the facts to the standard of medical disability necessary to receive medicaid benefits. The relevant sections of the Department's regulation cited by Mrs. Pratt provide as follows:

"Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which can be . . . expected to last for a continuous period of not less than twelve (12) months." Vermont Welfare Assistance Manual § 2423.51(a).

"Impairment" is defined as "a physical or mental problem which restricts, or could reasonably be expected to restrict, the applicant's ability to perform daily functions or to engage in job activities." *Id.* (b).

The Department does not dispute the applicability of these regulations.

In a similar case arising under earlier welfare regulations, we observed that "[n]o competent evidence was introduced below to show that petitioner is able to engage in the necessary activities of a useful occupation well enough and with sufficient regularity to receive regular payment. The Board's conclusion is based solely upon conjectural and speculative findings." *In re Willey,* 133 Vt. 593, 596, 350 A.2d 353, 355–56 (1975).

In the instant case, a "vocational expert" testified before the hearing officer on behalf of the Department. The expert attempted to prove that Mrs. Pratt's disability was not total and that she could perform the duties of a school cafeteria kitchen worker because she would be able to sit and stand alternately. The expert went on, however, to testify about the *medical nature* of Mrs. Pratt's case; the vocational expert testified that Mrs. Pratt's emotional problems were relieved by medication, that her problems were exacerbated by her home situation, that her physical problems were exacerbated by her mood and that her various health problems would improve if she were out of the house. Obviously, these opinions were not within the competence of the vocational expert; they were of a medical rather than a vocational nature. The hearing officer correctly observed this witness' lack of qualification to make such judgments.

None of the above assessments would be totally unreasonable if the vocational expert was qualified to make them. Based as they mostly are, however, on conjecture, speculation and unqualified medical judgment, they cannot

form the basis of a conclusion that the petitioner is capable of working the jobs the expert described. Moreover, most of the assessments are contradicted by the evidence.

We agree with the hearing officer that the vocational expert was not qualified to make medical assessments about Mrs. Pratt, and that the medical evidence contradicts the expert's testimony. Consistent with our decision in *Willey, supra,* the hearing officer correctly summarized the medical evidence: "[I]t is [Mrs. Pratt's] inability to do any *sustained* activity that is the basis of her disability."

Our review of the Board's order leaves no doubt that its decision was based largely on the improper testimony of the vocational expert. See the excerpt from the Board's order quoted above. We hold that the Board's conclusion that Mrs. Pratt's "inertia is a major contributing factor to [her] claimed disability" is not supported by the evidence and is based on speculation and conjecture. *Willey, supra.*

Section 3091(c) requires that "the board shall enter its order based on the findings." The findings of the hearing officer, which we have held are binding on the Board in this case, overwhelmingly support a conclusion that Mrs. Pratt is medically disabled. *St. Francis* v. *Department of Social Welfare,* 134 Vt. 344, 344–45, 360 A.2d 94, 96 (1976); *Willey, supra,* 133 Vt. at 597, 350 A.2d at 356. She is unable to engage in any substantial gainful activity based on virtually all of the medical testimony. The Board's order was not based on the findings, 3 V.S.A. § 3091(c), and, therefore, it cannot stand.

*The judgment of the Human Services Board is reversed, and the cause is remanded for determination and payment of appropriate benefits.*