# In re Declaratory Ruling #149 Trono Construction Company

[508 A.2d 695]

No. 84-289

Present: **Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed February 28, 1986

*Robert C. Roesler* of *Dinse, Allen & Erdmann*, Burlington, for Plaintiff-Appellant.

*John J. Easton, Jr.*, Attorney General, and *Merideth Wright*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Hill, J.** Petitioner, Trono Construction Company (Trono), appeals from the decision of the Environmental Board (Board), requiring Trono to obtain a permit pursuant to 10 V.S.A. Chapter 151 (Act 250) for the construction of a nine-unit housing project on North Union Street in Burlington. We affirm.

In 1983-84, Trono built two housing projects on separate parcels of land in the city of Burlington. It obtained an Act 250 permit for the first project, approving construction of twelve units on College Street. After that construction was completed but before

all the units were sold, Trono began construction on the development project at issue here, the nine units on North Union Street. Trono initially did not file for an Act 250 permit for this project because the project contained less than ten units, the number that automatically triggers review under the statute. 10 V.S.A. § 6001(3). It later petitioned the Board for a declaratory judgment, however, to clarify the relationship between the North Union Street development project and Act 250.

The pertinent statutory provision, 10 V.S.A. § 6001(3), reads as follows:

> The word "development" shall mean the construction of housing projects such as cooperatives, condominiums, or dwellings, . . . with 10 or more units, constructed or maintained on a tract or tracts of land, owned or controlled by a person, within a radius of five miles of any point on any involved land.

Trono's projects are well within the statutory five-mile radius; the two tracts are one-half mile apart. The question for determination thus reduces to whether Trono's projects are so closely related as to constitute a single "development" for purposes of Act 250.

In evaluating whether these two construction projects constituted a single "development," the Board considered common-sense criteria such as common ownership or management, common funding, shared facilities and contiguity in time of development. The Executive Officer of the Board and the Board, on de novo review, both concluded that the mixture of the timing of the projects and common ownership brought Trono's second development project within the strictures of Act 250.

Petitioner contends that the Board's reliance on contiguity of development and common ownership was not warranted on the facts of this case. Although it began development on the second tract before it was able to sell all of the College Street units, Trono argues that it did not intend to retain ownership or control of any unit in either project. Trono also claims that there was no real contiguity of development as construction was completed on the first project before the second project was begun.

The evidence presented by petitioner to rebut the Board's conclusion on retained common ownership is not so clear and convincing as to overcome the presumption of validity which attaches

to the Board's ruling. *In re Devoid*, 130 Vt. 141, 148, 287 A.2d 573, 577 (1972) (citations omitted) ("presumption in favor of the validity of the administrative determination is . . . a strong one, and clear and convincing evidence is required to overcome it"). Regardless of petitioner's intentions, Trono clearly owned a unit on the first tract when it began construction of additional units on the second tract.

Petitioner cites an Environmental Board staff advisory opinion and contends that common ownership alone is insufficient to invoke the Board's jurisdiction under Act 250. In that case, however, the developer built several scattered projects over a period of 11 years. Executive Officer Advisory Opinion EB-83-30, November 17, 1983. Trono's projects, by contrast, were both completed within a two-year period. We cannot say that, on the facts of this case, contiguity in time of development could not be considered by the Board, in conjunction with petitioner's retained common ownership, in ruling that Trono's second project required Act 250 approval.

Petitioner argues that the policies of Act 250 are not served by requiring developers to obtain Act 250 approval when they have already complied with similar municipal standards. We disagree.

Act 250 establishes a review of certain "developments" at the state level. Its purpose is not to supersede local regulation. "Thus, where local regulation is in effect, a person proposing to subdivide or develop might have to gain approval both at the state and local levels . . . ." *Committee to Save Bishop's House, Inc.* v. *Medical Center Hospital of Vermont, Inc.*, 137 Vt. 142, 145, 400 A.2d 1015, 1017 (1979). Of course, in the event that Act 250 requirements become a duplication of local standards, the developer may use the permits obtained from municipal agencies in the Act 250 process if they satisfy the appropriate requirements of 10 V.S.A. § 6086(a). See 10 V.S.A. § 6086(d). Environmental Board Rule 19 implements this procedure and should prevent any unnecessary delays for the developer.

*Affirmed.*