

### In re C.M.

[721 A.2d 1176]

No. 97-245

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Katz, Supr. J., Specially Assigned**

Opinion Filed October 9, 1998

*Robert Appel,* Defender General, and *William A. Nelson* and *Henry Hinton,* Appellate Attorneys, Montpelier, for Plaintiff-Appellant.

*William H. Sorrell,* Attorney General, Montpelier, and *Michael O. Duane* and *Barbara L. Crippen,* Assistant Attorneys General, Waterbury, for Defendant-Appellee.

**Morse, J.** C.M. (father) appeals an order of the Vermont Human Services Board denying his request to expunge from the child-abuse registry two findings that he sexually abused his daughter, M.M. See 33 V.S.A. § 4916(h). He claims that the Board's ruling should be reversed because the Board (1) erred in reaching a conclusion inconsistent with the hearing officer's findings, and (2) failed to apply V.R.E. 804a to determine the admissibility of the child victim's hearsay testimony. We reverse the Board's ruling, adopt the findings of the hearing officer and order the Commissioner of Social and Rehabilitation Services (SRS) to expunge father's name from the child-abuse registry.

The relevant findings of the hearing officer as adopted by the Board are as follows. In July 1992, J.M. (mother) observed her then three-year-old daughter, M.M., engage in sex play with her six-year-old male cousin. When mother asked M.M. where she had learned about this, M.M. named three people: a teacher, a babysitter, and a six-year-old cousin. Later that day, mother reported this conversation to her husband, the child's father, who dismissed it as unimportant. The next day, still concerned, mother spoke with her sister about M.M.'s behavior and allegation that her son (cousin) was one of the persons who taught M.M. this information. Cousin had been sexually abused within the last year. Aunt questioned her son, and he denied ever being alone with M.M. Aunt then questioned M.M. using informational pamphlets on child sexual abuse she consulted as a result of her son's sexual abuse. Using a doll and family pictures, M.M. pointed to a picture of her father when asked who had given the doll "bad touches."

The next day mother and aunt took M.M. to see a social worker at Catholic Charities. Based on that interview, Catholic Charities reported to SRS that M.M. may have been sexually abused by someone,

perhaps a young cousin. SRS then set up an interview with the parents on July 27, 1992.

In the interim, the mother questioned M.M. about sexual abuse and specifically asked her if she had ever had a "wrong touch." The child replied, "I can't tell. I can't tell." Mother then showed M.M. a picture with twelve people in it and asked her if the person was in the picture. The child put an eraser over her father's picture and stated, "Daddy did it." Later, when M.M. saw father come home from work, she pointed to her privates and said, "I told." Father vehemently denied that he had sexually abused M.M.

The SRS investigator assigned to the case interviewed M.M., mother, father, aunt, and a psychologist who was treating the child. Based upon those interviews, the investigator concluded that M.M. had been sexually abused by her father and notified him on August 4, 1992 that he had been found to have fondled and to have had intercourse and genital-anal contact with his daughter. A subsequent investigation was commenced in October 1992 based on reports that M.M. had made additional disclosures. This resulted in a second finding on December 1, 1992 that father had genital-oral contact with his daughter and had wrongfully confined her. Because the allegations of sexual abuse were found to be substantiated by the SRS investigator, both findings were entered into the child-abuse registry maintained by SRS.

Based on the SRS investigation, a criminal action was brought against father, and he was charged with two violations of 13 V.S.A. § 3253(a)(8) for aggravated sexual assault arising from two alleged incidents occurring sometime in a two-year period between August 1990, when M.M. was eighteen months old, and July 1992. M.M. testified at a videotaped deposition, which was reviewed by the district court. The court ruled that the child was not competent to testify under V.R.E. 602, because the child was so young at the time of the alleged offenses and was an "uncooperative and unfocused witness." The court also concluded that the evidence pertaining to the sexual assault consisted of uncorroborated hearsay which lacked sufficient indicia of reliability. Consequently, the action was dismissed.

On June 23, 1995, father requested expungement of the civil findings made by SRS. A hearing was conducted by a hearing officer for the Human Services Board at which all of the principal witnesses testified, except M.M. The hearing officer determined that further questioning of M.M. would be harmful based on the testimony of the psychologist that the child had been severely traumatized and her

recovery from the abuse could be jeopardized by forcing her to relive the events.

A Vermont state police investigator testified at the hearing. He was present at the initial interview with SRS on July 27, 1992, and made a tape recording and transcript of that interview, neither of which were produced at the hearing; the record on appeal does not disclose whether they were requested. He was also present at a second interview with SRS but made no recording of that session. He could not recall any of the child's specific statements although he remembered that "he could not get much out of her."

Father has consistently denied the allegations and did the same at the hearing. The hearing officer determined that SRS's findings that father abused M.M. rested solely on the credibility of the alleged victim and noted that the child's statements were offered through the testimony of several individuals, including relatives and professionals who had interviewed M.M. The hearing officer found that the statements made by M.M.'s mother and aunt, as well as those made by the SRS social worker and the child's therapist, were "sincere efforts to recall what the child actually said and contain a good deal of internal consistency." The hearing officer concluded that M.M.'s statements, as represented by the witnesses, were not reliable. The hearing officer listed a number of reasons underlying this determination: The child initially named other perpetrators, but there was no evidence that any of the other named perpetrators were interviewed by SRS. The initial interview was conducted by the aunt, a person with no training in interviewing children and whose son was a named perpetrator. No recording was produced of the interview, preventing an assessment of the suggestibility of the questioning or credibility of the responses. The hearing was conducted four years after the initial unrecorded interview with the child, affecting the reliability of the hearsay statements made at the hearing. The criminal proceeding's impact on the child could have affected the spontaneity and reliability of the child's statements. Finally, the evidence disclosed that over the months following the initial report, the child's terms for the sexual abuse changed, suggesting that the child was modeling her language to that of the adults who questioned her. The hearing officer therefore recommended that father's name be expunged from the registry.

Although the Board adopted verbatim twenty of the hearing officer's twenty-one paragraphs of findings, it amended the final paragraph by eliminating all of the hearing officer's findings pertaining to the unreliability of the child's statements and instead concluded

that "the [adopted] findings compellingly establish that the petitioner was the perpetrator of the sexual abuse of M.M.," and rejected the hearing officer's recommendation. The Board reasoned that because the hearing officer found that hearsay witnesses were credible, "the only consistent and reasonable conclusion to be drawn from the evidence presented is that the petitioner was the perpetrator." Father appeals this decision.

## I.

Because we find the issue dispositive, we begin by addressing father's claim that the Board erred in reaching a conclusion not supported by the hearing officer's findings. The hearing in this case was conducted by a hearing officer pursuant to 3 V.S.A. § 3091(b). Thus, the issue is whether the Board complied with the § 3091(c) requirements for rendering an order based on the hearing officer's findings.

Section 3091(c) provides:

> The board or the hearing officer shall issue written findings of fact. If the hearing is conducted by a hearing officer the hearing officer's findings shall be reported to the board, and the board shall approve the findings and adopt them as the findings of the board *unless good cause is shown* for disapproving them. Whether the findings are made by the board, or by a hearing officer and adopted by the board, the board shall enter its order based on the findings.

3 V.S.A. § 3091(c) (emphasis added). In *Pratt v. Department of Social Welfare*, 145 Vt. 138, 142, 482 A.2d 1389, 1391 (1984), we stated that the hearing officer acts as the finder of fact for the Board. Further, we explained that under § 3091(c) the Board must approve and adopt the findings of the hearing officer unless the Board demonstrates good cause to reject the findings made by the hearing officer. See *id*. Thus, the burden here was on the Board to show good cause to disapprove any findings when it rendered its decision contrary to the hearing officer's recommendations. See *id*.

We must first determine whether the Board complied with the good cause requirement for rejecting part of the hearing officer's findings. See *id*. at 141, 482 A.2d at 1391. Here, the Board offered no explanation as to why it did not adopt the hearing officer's finding that M.M.'s statements were unreliable and made no findings to negate

the six reasons why the hearing officer could not find M.M.'s statements credible. In fact, nowhere were the hearing officer's findings disputed. Instead, the Board merely concluded that the hearing officer's other findings "compellingly establish" that father abused M.M. Further, the Board held that "if the alleged victim's allegations are deemed to be credible, and those allegations are deemed to constitute sexual abuse, the Department [of SRS]'s decision [to place father's name in the registry] must be affirmed." It then concluded that because the hearing officer found the witnesses who related M.M.'s hearsay statements were credible witnesses, father sexually abused M.M.

■ The point, however, is not whether the witnesses relating the hearsay were telling the truth, but whether the hearsay was worthy of belief. The hearing officer determined it was not, and the Board never found cause to reject her findings on the lack of credibility of M.M.'s statements. Therefore, we conclude that the Board failed to meet its burden of demonstrating good cause as required under § 3091(c). Consequently, the facts as found by the hearing officer are deemed adopted by the Board as required by § 3091(c) and constitute the record for our review. See *id.* at 142, 482 A.2d at 1391.

■ In reviewing the findings of the hearing officer deemed approved under the statute, the hearing officer determined that the child's statements as recounted by the witnesses could not serve as accurate descriptions of the alleged events. The hearing officer concluded that the quality of the hearsay evidence "militate[s] against assigning any accuracy or reliability to the child's statements in this case." Based on this finding, it is axiomatic that father's name must be expunged from the child-abuse registry.

## II.

Because of our resolution of the first claim, we need not address father's remaining claims of error.* The parties, however, raise an important and related issue that should be settled. That issue concerns the proper evidentiary standard governing the admissibility of child hearsay statements concerning sexual abuse in an expungement hearing; father contends that V.R.E. 804a controls,

---

* Father also claimed that the Board relied solely on hearsay allegations in violation of the father's constitutional right to due process and that SRS failed to sustain its burden of producing evidence to support its conclusion that he had abused M.M.

whereas SRS argues that the Board's more relaxed hearsay rule, Rule 12, should govern.

Under the relevant provisions of V.R.E. 804a, a witness may testify to hearsay statements made by a child ten years old or younger if (1) the statements are offered in a sexual abuse case where the child is an alleged victim, (2) the statements were not taken in preparation for a legal proceeding, (3) the child is available to testify in court or under V.R.E. 807, and (4) the time, content and circumstances of the statements show substantial indicia of trustworthiness. See V.R.E. 804a; *State v. Weeks*, 160 Vt. 393, 399, 628 A.2d 1262, 1265 (1993).

SRS argues that Rule 12 provides an exception to V.R.E. 804a. Rule 12 states that the Rules of Evidence shall be followed "except that the hearing officer may allow evidence not admissible where in his or her judgment, application of the exclusionary rule would result in undue hardship and the evidence offered is of a kind commonly relied upon by reasonably prudent persons in the conduct of their affairs." Human Services Agency, Human Services Board, Fair Hearing Rule 12, 4 Code of Vt. Rules, Rule 13 020 002 at 3 (1995). The Board in this case applied Rule 12 with regard to M.M.'s hearsay statements rather than the standards set out in V.R.E. 804a.

The Court has yet to squarely address whether V.R.E. 804a applies to expungement proceedings. V.R.E. 804a was amended in 1993 to extend to statements of a child offered in administrative and civil proceedings in addition to criminal proceedings. See 1993, No. 100, § 11. The Rule, as amended, allows the admission of hearsay statements of a child victim in certain enumerated criminal proceedings and juvenile proceedings, see V.R.E. 804a(1) (statements not excluded as hearsay if child is putative victim of sexual assault under 13 V.S.A. § 3252; aggravated sexual assault, 13 V.S.A. § 3253; lewd or lascivious conduct, 13 V.S.A. § 2602; or criminal or civil juvenile proceedings under chapter 55 of Title 33), but does not enumerate the specific administrative proceedings in which it is applicable.

 Instead, V.R.E. 804a provides a rule of general applicability in addition to the proceedings specifically enumerated. This provision states that V.R.E. 804a is applicable "in a civil, criminal or administrative proceeding in which the child . . . is a putative victim of . . . wrongful sexual activity and the statements concern . . . the wrongful sexual activity." V.R.E. 804a(a)(1). The plain language of V.R.E. 804a indicates that the Legislature intended this hearsay exception to apply to any civil, criminal or administrative proceeding in which such statements are offered. See *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d

943, 946 (1996) (the first step in determining legislative intent is to look at the language of the statute itself); see also Reporter's Notes, 1993 Amendment to V.R.E. 804a (amendment makes hearsay exception applicable in proceedings under 13 V.S.A. § 2601, 33 V.S.A. § 6913 and to statements concerning wrongful sexual activity "presumably" under any statutory provision). Moreover, V.R.E. 804a does not enumerate any specific administrative proceedings in which it is applicable; consequently, we conclude that the general rule must apply in administrative proceedings. We find no reason to exclude expungement proceedings from this general rule. Accordingly, we conclude that V.R.E. 804a applies in determining the admissibility of child hearsay statements concerning sexual abuse in an expungement hearing.

*Reversed; findings of the hearing officer are adopted; the Commissioner is ordered to expunge father's name from the child-abuse registry.*